UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| TAMMY LYNN ROSE, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>*Defendant*. ) | No. 4:23-CV-00005-TRM-SKL |

### REPORT AND RECOMMENDATION

Plaintiff Tammy Lynn Rose ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her supplemental security income ("SSI"). Each party has filed a brief seeking judgment in their favor pursuant to Rule 5 of the Federal Rules of Civil Procedure Supplemental Rules for Social Security [Doc. 12 & Doc. 14]. Plaintiff also filed a reply brief pursuant to Rule 8 of the Supplemental Rules [Doc. 15]. For the reasons stated below, I recommend: (1) Plaintiff's request for relief be denied, and (2) the Commissioner's request for affirmance of her decision denying benefits be granted.

### I. ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 7 ("Tr.")], Plaintiff filed her application for SSI on September 23, 2020, alleging disability beginning January 1, 2015. Plaintiff's claim was denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was conducted by telephone due on March 23, 2022. On April 19, 2022, the ALJ found Plaintiff had not been under a disability as defined in the Social

Security Act at any time from the application date through the date of the ALJ's decision.[1] The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born June 20, 1979, making her 41 years old on the date she filed her application for SSI benefits, which is considered a "younger person." 20 C.F.R. § 416.963(c). She has at least a high school education and is able to communicate in English. She has no past relevant work.

### B. Medical Records

In her September 2020 Disability Report, Plaintiff alleged disability due to PTSD, bipolar disorder, manic depression, personality disorder, anxiety, and "night terrors" (Tr. 208). There is no need to summarize all of the medical records but the relevant records have been reviewed.

### C. Hearing Testimony

At the telephonic hearing held March 23, 2022, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing. The transcript of the hearing has been carefully reviewed (Tr. 28-49).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

---

[1] SSI applicants are entitled to benefits beginning with "the month following the month" the application is filed, regardless of the alleged onset of disability date. *See* 20 C.F.R. § 416.335.

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of their impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs

3

the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

### B. The ALJ's Findings

At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the date she filed her application for SSI benefits. At step two, the ALJ found Plaintiff had the following severe, medically determinable impairments: (1) depression, (2) anxiety, and (3) personality disorder. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform work at the full range of exertional levels, with the following non-exertional limitations:

- She is limited to understanding, remembering, and carrying out only simple work instructions.

- She is limited to only occasional changes in work settings.

- She is limited to only occasional interaction with the general public, coworkers, and supervisors.

(Tr. 19).

At step four, the ALJ found Plaintiff had no past relevant work. At step five, however, the ALJ found there were occupations with jobs existing in substantial numbers in the national economy that a person with Plaintiff's RFC could perform, including hand packager, machine packager, and motor vehicle assembler (Tr. 22).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between her application date and the date of the ALJ's decision (Tr. 23).

4

## IV. ANALYSIS

Plaintiff argues the RFC assessed by the ALJ in this case "is not supported by substantial evidence because the ALJ failed to explain his omission of moderate restriction in concentration, persistence and pace[2] from the RFC and the dispositive hypothetical question, despite finding limitations in this area at . . . Step 2 of the sequential evaluation process." [Doc. 12 at Page ID # 1930].

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations

---

[2] At times, for the sake of readability, this R&R will use the shorthand "CPP" to refer to concentration, persistence, and pace.

5

omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

B. **Residual Functional Capacity and Concentration, Persistence, and Pace**

When evaluating a claimant's alleged mental impairments, the ALJ is required to rate the degree of functional limitation in each of "four broad functional areas": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. § 404.1520a(c). These are often referred to as the "paragraph B criteria." (Tr. 17). At step three of the sequential

6

evaluation process, when considering whether Plaintiff's severe mental impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ found Plaintiff had moderate functioning limitations in each of the paragraph B criteria.

After step three, the ALJ is required to assess a claimant's RFC. In this case, Plaintiff concedes the RFC assessed by the ALJ accounts for moderate limitations in three of the four paragraph B criteria:

> The RFC accommodates moderate restrictions in ability to understand, remember and apply information, by limiting Plaintiff to simple work instructions. T 18, 19. The RFC accommodates moderate restrictions in interacting with others by limiting Plaintiff to no more than occasional interaction with the general public, coworkers, and supervisors. T 18, 19. The RFC accommodates moderate restrictions in adaptation by limiting Plaintiff to no more than occasional work-setting changes. T 18, 19.

[Doc. 12 at Page ID # 1937]. Plaintiff argues, however, that "the RFC contains no restrictions which would accommodate the ALJ[']s finding that Plaintiff has moderate restrictions in concentration, persistence and pace." [*Id.*]. She contends the moderate restrictions in CPP "were well documented in the record by sources the ALJ found to be persuasive," and further that the ALJ's failure to include additional CPP-related limitations in the RFC or in the hypothetical questions posed to the VE[3] constitutes harmful error [Doc. 15 at Page ID # 1956-57]. That is, because the hypothetical question to the VE did not accurately and adequately account for Plaintiff's moderate CPP limitations, the VE's testimony cannot constitute substantial evidence sufficient to meet the Commissioner's burden at step five.

---

[3] Plaintiff acknowledges the VE was "asked to assume the restrictions which the ALJ ultimately adopted and incorporated into the RFC," and the VE responded that a person with those restrictions could perform the jobs the ALJ ultimately relied on at step five [*see* Doc. 12 at Page ID # 1935].

As both parties acknowledge, the "limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 (SSA July 2, 1986). An "ALJ does not necessarily err by finding moderate limitations at step three but excluding those limitations in a 'residual functional capacity' analysis at steps four and five." *Wood v. Comm'r of Soc. Sec.*, No. 19-1560, 2020 WL 618536, at *3 (6th Cir. 2020). Moreover, an "ALJ is only required to incorporate into a hypothetical question those limitations he finds credible." *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

In this case, the ALJ found the following at step three regarding Plaintiff's CPP:

> With regard to concentrating, persisting or maintaining pace, the claimant had a moderate limitation. The claimant has difficulty preparing meals and completing household chores. As noted above, the record shows the claimant possessed a logical, goal directed thought process, is able to follow [her] providers' treatment recommendation, and no provider noted any learning barriers. Moreover, the record fails to show any mention of distractibility and an inability to complete testing that assesses concentration and attention (Exhibits 3E, 4E, 9E, 14E, testimony).

(Tr. 18). The ALJ concluded his step three analysis by acknowledging, as the parties do, that the mental RFC "used at steps 4 and 5 of the sequential process requires a more detailed assessment of the areas of mental functioning." (Tr. 19). He then stated that the RFC assessment "reflects the degree of limitation [he] has found in the 'paragraph B' mental function analysis." (Tr. 19).

In proceeding with the sequential evaluation process and assessing Plaintiff's RFC, the ALJ discusses evidence relevant to Plaintiff's CPP. For example, the ALJ acknowledges Plaintiff's testimony that she has a "history of sadness, paranoia, and anxiety, [which] causes

8

decreased focus, poor sleep, and fatigue, which hinder her ability to complete tasks." (Tr. 19). When discussing Plaintiff's records from Cheer Mental Health Center and Volunteer Behavioral Health, the ALJ noted Plaintiff was "habitually observed alert, oriented, and in no distress," and she "routinely denied disorientation, memory loss" (Tr. 20). The ALJ specifically noted Volunteer Behavior Health records from July and November 2021 indicating Plaintiff's thought processes, attention, concentration, judgment, insight, and orientation were all within normal limits (Tr. 20, Tr. 1760, Tr. 1767). As for Plaintiff's records from St. Thomas River Park Hospital,[4] the ALJ similarly noted Plaintiff was "habitually observed alert, oriented, and in no distress," and further Plaintiff "did not report disorientation, disturbing thoughts, excessive stress, hallucinations, memory loss, mood changes, nervousness, or severe psychiatric symptoms." (Tr. 20). The ALJ emphasized the record contains "no objective reports that the claimant was unable to maintain attention and concentration, or failed to have an intact memory, logical thoughts, adequate judgment, or poor insight." (Tr. 20).

The ALJ also found the opinions of the State agency psychological consultants to be "generally persuasive." (Tr. 21). They opined, initially and on reconsideration, that Plaintiff had moderate limitations in her ability to concentrate, persist, or maintain pace (Tr. 57, 70). When asked to explain the CPP limitation "in narrative form," they wrote:

> Available data suggests that the clmt is able to carry out simple and detailed instructions, follow simple work-like procedures, and make simple work-related decisions. Clmt appears to have ability to sustain attention throughout extended periods of time (up to 2 hours at a time). Clmt appears to have adequate ability to perform at a consistent pace particularly if she is engaged in at

---

[4] The ALJ acknowledged Plaintiff was primarily treated for physical conditions at St. Thomas Medical Partners, but noted Plaintiff's caregivers at St. Thomas "also observed her psychiatric state" (Tr. 20).

> least a simple (simple to semi-skilled/detailed) task. She appears to
> have an adequate ability to maintain a regular schedule.

(Tr. 61, Tr. 72).

The ALJ then concluded his RFC assessment by briefly reiterating his evaluation of Plaintiff's subjective reported symptoms, finding that while some of Plaintiff's allegations concerning her symptoms were supported by the record, "the allegations concerning severity and functional restrictions are not." (Tr. 22).

Contrary to Plaintiff's contention, the foregoing discussion demonstrates the RFC—which is limited to simple work instructions, only occasional changes in work settings, and only occasional interaction with other people—has substantial support in the record and is not inconsistent with the ALJ's findings at steps two and three. Furthermore, it illustrates how the ALJ built a "logical bridge between the evidence and the conclusion that the claimant is not disabled." *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (citation omitted).

In *Kepke v. Commissioner of Social Security*, 636 F. App'x 625, 635 (6th Cir. 2016), the Sixth Circuit found no error where the ALJ found moderate CPP limitations at steps two and three, but the assessed mental RFC included restrictions only for "simple, unskilled work that does not require any complex written or verbal communication," and was "low stress" with "no more than occasional interaction with the public and with co-workers.." *Id.* at 628. In affirming the denial of benefits, the court reasoned that the claimant "has not cited to any evidence in the record that provides for specific, concrete limitations on her ability to maintain concentration, persistence or pace while doing simple, unskilled work." *Id.* at 635. The Sixth Circuit noted that "[c]ase law in

10

this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is per se insufficient to convey moderate limitations in concentration, persistence and pace." *Id.* at 635.

The *Kepke* court distinguished *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010):

> Kepke relies on *Ealy v. Commissioner of Social Security*, a case in which the Court found the ALJ's hypothetical providing for a limitation to "simple, repetitive tasks" did not properly convey the claimant's limitations. 594 F.3d 504, 516–17 (6th Cir.2010). *Ealy* is distinguishable from Kepke's case, however, because there, one of the claimant's doctors specifically limited his ability to sustain concentration to "simple repetitive tasks for two-hour segments over an eight-hour day where speed was not critical.'" *Id*. at 516. *Kepke*, however, has not cited to any evidence in the record that provides for specific, concrete limitations on her ability to maintain concentration, persistence or pace while doing simple, unskilled work.

*Kepke*, 636 F. App'x at 635 (brackets omitted).

Plaintiff attempts to distinguish *Kepke* from this case. She insists the "moderate restrictions" in CPP assessed by the State agency consultants provide "specific, concrete limitations" which the ALJ did not adequately address [Doc. 15 at Page ID # 1955]. The Sixth Circuit did not provide any details about the evidence Kepke relied on, other than to distinguish it from the "specific, concrete" limitations the ALJ failed to address in *Ealy*. However, another case cited in *Kepke* does provide details that render Plaintiff's position untenable. In *Smith-Johnson v. Commissioner of Social Security*, the Sixth Circuit found a claimant's moderate limitations in CPP were adequately accommodated by a limitation to "simple, routine, and repetitive tasks." 579 F. App'x 426, 437 (6th Cir. 2014). The court reasoned:

> Unlike in *Ealy*, Dr. Kriauciunas did not place any concrete functional limitations on [Smith-Johnson's] abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks. Instead, Dr. Kriauciunas plainly

11

> determined that Smith-Johnson could perform simple tasks on a "sustained basis," even considering her moderate limitations in maintaining concentration and persistence for "extended periods." In other words, the limitation to simple tasks portrays the tasks that she can perform without being affected by her moderate limitations.

*Id.* The *Smith-Johnson* court thus concluded that the ALJ "did not fail to include a restriction" opined to by the State agency consultant (Dr. Kriauciunas), but rather the ALJ properly accommodated the moderate limitations in CPP.

As noted above, the State agency consultants in this case similarly found that despite Plaintiff's moderate limitations in CPP, Plaintiff could maintain pace, keep up with a regular schedule, follow instructions and procedures, and complete tasks, provided she is limited to simple work (Tr. 57, Tr. 61, Tr. 70, Tr. 72). The ALJ adopted these limitations into Plaintiff's RFC, and further limited Plaintiff to only occasional interactions with her coworkers, supervisors, and the public (Tr. 19). Plaintiff does not cite any other limitations she contends are specific and concrete enough to distinguish her case from *Smith-Johnson* or to justify remand. Nor does Plaintiff does identify any particular job duty of a "hand packager" or "motor vehicle assembler" that she is unable to perform due to her moderate limitations in CPP.

The parties do not address *Smith-Johnson*, but it merely expands upon the reasoning in the *Kepke*/*Ealy* line of cases, and it highlights the significant difference between the proof at issue in *Ealy*, which required remand, and the proof at issue in this case, which does not.

The other cases Plaintiff relies on do not persuade me otherwise. In *Richardson v. Saul*, 511 F. Supp. 3d 791, 801 (E.D. Ky. 2021), the Eastern District of Kentucky remanded a claim for further proceedings based in part on the ALJ's failure to reconcile or address certain inconsistencies in his decision:

12

Case 4:23-cv-00005-TRM-SKL   Document 16   Filed 12/04/23   Page 12 of 16
PageID #: 1970

> Despite concluding that there were "no more than mild" mental limitations in Step 2, explicitly incorporating that finding into the RFC discussion, and giving great weight to an opinion that concluded there were "mild to moderate" mental limitations, the ALJ's decision did not explain why the judge omitted all mental limitations from the RFC formulation. By not including a discussion of why the RFC excluded Richardson's mental impairments, the ALJ did not provide "a more detailed" analysis of these mental impairments, at Step 4, as SSR 96-8p instructs. . . . The ALJ found mild limitations in three of four "paragraph B" categories. Dr. Dennis, given great weight, particularly opined that Richardson faced mild to moderate limitations regarding social interaction and adaptation to a normal work environment. Despite these limits, the RFC **contains not a whisper about such non-exertional factors**; the ALJ instead found Richardson capable of all medium work, with only certain postural modifications. Perhaps the ALJ rationally believed the functional limits had no impact on Richardson's work ability. Certainly, not every mild or moderate limitation signifies a compromised work ability. **The Court simply cannot discern this because the ALJ did not in any way address the matter**. Meaningful review requires more.

*Id.* at 799 (emphasis added).

Plaintiff's claim is readily distinguishable. The entire RFC analysis relates to Plaintiff's mental functioning. The ALJ assessed significant mental limitations and ultimately assessed a mental RFC entirely consistent with the medical opinions on which the ALJ purported to rely. The ALJ then cited evidence to explain why additional mental limitations were not justified. Perhaps the ALJ did not explicitly state that he declined to assign additional limitations related to Plaintiff's moderate limitations in CPP based on this evidence. The decision is nevertheless capable of meaningful review.

In *Wood v. Commissioner of Social Security*, No. 19-1560, 2020 WL 618536, at *2 (6th Cir. Jan. 31, 2020), the Sixth Circuit found no error where the ALJ found moderate CPP limitations at steps two and three but the only mental limitation in the RFC was for "simple and routine tasks." The Sixth Circuit observed the medical record "failed to support a finding of even moderate

13

limitations in Wood's concentration, but based on Wood's testimony the ALJ found . . . that Wood's condition was at least moderately limiting." *Id.* The court then emphasized the familiar rule that a finding of moderate limitations in CPP at steps two and three does not necessarily require any particular limitations in the RFC or in the ALJ's analysis at steps four and five. The court also explicitly credited the ALJ's statement that she considered the step three limitations in the subsequent analysis. *Id.* Plaintiff emphasizes that unlike in *Wood*, the medical record in this case does support a finding of moderate limitations in CPP. This is a distinction without a difference, however. The fact that Plaintiff's medical evidence is perhaps stronger than Wood's does not mean the ALJ in this case erred by not including additional mental restrictions in the RFC. As addressed above, the ALJ assessed an RFC consistent with the medical evidence in the record, including the State agency consultants' opinions. *See also Cox v. Kijakazi*, No. 3:21-CV-253, 2022 WL 2335331, at *1, *4, *8-9 (E.D. Tenn. June 28, 2022) (finding no error where ALJ assessed moderate CPP limitations at step three but mental RFC included limitations only for "simple tasks, where changes in the workplace are occasional."); *Kirkland v. Kijakazi*, No. 3:22-CV-60-DCP, 2023 WL 3205330, at *15 (E.D. Tenn. May 2, 2023) (affirming denial of benefits where plaintiff failed to "point to any evidence in the record" showing specific functional limitation not included in the RFC).

Plaintiff's remaining arguments are essentially variations on the same theme. She contends the ALJ failed to "actually explain why his decision contains conflicting findings as to Plaintiff's mental functioning." [Doc. 12 at Page ID # 1939]. She dismisses the ALJ's statement that the RFC reflects his paragraph B findings, calling it "a boilerplate reference." [*Id.*]. She claims the ALJ failed to "draw an accurate and logical bridge from the evidence to his conclusions," thereby preventing any meaningful review [*id.*]. To the contrary, in assessing Plaintiff's RFC, the ALJ

14

explained the evidence that supported his conclusion, why he considered certain evidence less persuasive, and why additional limitations were not included in the RFC. The record reflects adequate support for the ALJ's findings and conclusions. *See Schmiedebusch*, 536 F. App'x at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . ." (citation omitted)).

I find Plaintiff has not shown any harmful error in the ALJ's assessment of Plaintiff's RFC or any inadequacy in the ALJ's explanation thereof. Further, as mentioned, it is undisputed that the hypothetical question posed to the VE during the hearing matches the RFC the ALJ ultimately adopted. As a result, the VE's testimony provides substantial support for the ALJ's conclusion at step five, and it is unnecessary to address Plaintiff's argument on these issues any further.

Because the ALJ had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Plaintiff's] subjective complaints," *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001), judicial review is limited to whether the ALJ relied on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, No. 21-1384, 2022 WL 740692, at *2 (6th Cir. Jan. 4, 2022) (quoting *Biestek*, 139 S. Ct. at 1154). In this case, the record reflects adequate support for the ALJ's findings and conclusions. *See Schmiedebusch*, 536 F. App'x at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . ." (citation omitted)).

V. **CONCLUSION**

For the foregoing reasons, I **RECOMMEND**[5]:

---

[5] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must

(1) Plaintiff's request for relief [Doc. 12 & Doc. 15] be **DENIED**; and

(2) the Commissioner's request for affirmance of her final decision denying benefits [Doc. 14] be **GRANTED**.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

16